**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHAFFEY JOINT UNION HIGH SCHOOL DISTRICT,<br><br>                               Plaintiff,<br><br>                  v.<br><br>FIELDTURF USA INC., *et al.*,<br><br>                               Defendants. | Civil Action No. 17-4516 (MAS) (TJB)<br><br>**MEMORANDUM ORDER** |

**SHIPP, District Judge**

This matter[1,2] comes before the Court upon Plaintiff Chaffey Joint Union High School District's ("Plaintiff" or "Chaffey") letter brief (ECF No. 94) requesting that this Court set aside its order dismissing the Member Case and return the Member Case to its originating court in the Central District of California, Case No. 5:16-cv-204.[3] Defendants FieldTurf, Inc.; FieldTurf USA Inc.; and FieldTurf Tarkett SAS (collectively, "FieldTurf" or "Defendants") filed correspondence opposing the request. (ECF No. 97.) The Court has carefully considered the parties' submissions and reaches its decision without oral argument under Local Civil Rule 78.1(b).

---

[1] The above-captioned matter (the "Member Case") was a member case in *In Re FieldTurf Artificial Turf Marketing and Sales Practices Litigation*, Case No. 3:17-md-2779 (the "MDL"). On January 3, 2025, the Court closed the Member Case (*see* Jan. 3, 2025, Text Order, ECF No. 90), pursuant to the Final Judgment entered on December 13, 2024, in the MDL (MDL, Final J., ECF No. 378).

[2] Citations beginning with "MDL," refer to the ECF Nos. from the MDL, Case No. 3:17-md-2779.

[3] The Court also notes that after receiving the Court's January 3, 2025, Text Order (ECF No. 90), Plaintiff's counsel filed correspondence (ECF No. 91) on January 5, 2025, first raising this argument. After receiving Plaintiff's correspondence, the Court scheduled a telephone conference (ECF No. 92) and subsequently ordered further briefing on the dispute (ECF No. 93).

The parties are familiar with the factual background and extensive procedural history of this matter, and the Court, therefore, only recites those facts necessary to resolve the instant dispute. Plaintiff initiated the Member Case in the Central District of California. (Pl.'s Br. *1[4], ECF No. 94; Decl. of P. Lindborg ("Lindborg Decl.") ¶ 2, ECF No. 94.) In June 2017, the Member Case was transferred into the MDL and Plaintiff's counsel appeared at the first hearing this Court held for the MDL. (Pl.'s Br. *1-2; Lindborg Decl. ¶ 3; Defs.' Br. 2, ECF No. 97.) After the Court appointed class and liaison counsel for the MDL in August 2017 (*see* MDL, Order Appointing Lead Counsel & Pls.' Exec. Comm., ECF No. 61), Chaffey "cooperated with class and liaison counsel . . . , but [Chaffey's counsel] individually appeared on behalf of Chaffey" at proceedings for the MDL. (Pl.'s Br. *2; Lindborg Decl. ¶¶ 4-5). For example, in advance of a November 2022 hearing, Chaffey's counsel emailed the Court, seeking "permission to attend the [scheduled] conference. . . by virtual means," noting that Chaffey "is not a member of the proposed class." (Pl.'s Br. *2; Lindborg Decl. ¶ 5; Ex. A to Lindborg Decl., ECF No. 94.) Chaffey's counsel also did not actively participate in the prosecution of the class action. (Defs.' Br. 2; *see also* Jan. 5, 2025, Correspondence *1, ECF No. 91.)

As the litigation progressed, in July 2023, the Court granted the Renewed Motion for Class Certification and granted the request to appoint class counsel. (*See generally* MDL, July 13, 2023, Mem. Op., ECF No. 285; MDL, July 13, 2023, Order, ECF No. 286.) The parties subsequently reached a proposed class settlement, which was announced in Spring 2024. (*See generally* MDL, Mot. for Prelim. Approval of Class Action Settlement, ECF No. 358.) After the proposed settlement was announced, but before this Court granted preliminary approval, Chaffey's counsel

---

[4] Page numbers preceded by an asterisk refer to the page numbers noted in the ECF header.

and FieldTurf's counsel exchanged e-mail messages about the proposed class settlement. (*See* Pl.'s Br. *2; Lindborg Decl. ¶ 8; Ex. B to Lindborg Decl., ECF No. 94; Defs.' Br. 2-3.) In the exchanged e-mail messages, Chaffey's counsel reached out to "raise the opportunity to resolve the remaining individual actions" in light of the pending class action settlement. (Ex. B to Lindborg Decl. *14.) In reply, FieldTurf's counsel represented that FieldTurf "believes that the settlement reached with the class represents a good value for the Chaffey plaintiffs and recommends that they consider participating[,]" and asked Chaffey's counsel to follow up on why Chaffey believes it is "differently situated" from the class. (*Id.* at *13.) Chaffey's counsel replied, stating that "Chaffey has chosen not to participate in the class precisely because its situation is different," but that "Chaffey is still interested in exploring whether [its] case can be settled on an amicable basis[.]"(*Id.* at *11-12.)

In an Order dated June 26, 2024 (the "Preliminary Approval Order"), the Court approved the preliminary class action settlement. (*See generally* MDL, Order Granting Prelim. Approval of Class Action Settlement, ECF No. 365.) In that Order, the Court identified the "Settlement Class" as "all purchasers and owners of a FieldTurf Duraspine turf field sold from 2005 to 2012 in the United States and its territories." (*Id.* ¶ 5.) The Court further detailed the steps any Settlement Class Member must take to be excluded from the Settlement Class:

> [a]ny Settlement Class Member who wishes to be excluded from the Settlement Class must timely submit a completed Request for Exclusion. . . . All Requests for Exclusion and supporting papers must be in writing and must:
>
> > (1) Clearly identify the case name and number, *In re FieldTurf Artificial Turf Marketing and Sales Practices Litigation*, 3:17-md-02779-MAS-TJB; and
> >
> > (2) Include the full name, address, telephone number, email address of the person requesting exclusion and a signature executed by the person requesting exclusion; and

(3) Include any reasonably available proof that the person requesting exclusion is a Settlement Class Member.

(*Id.* ¶ 16.) The Order specifically noted that "*[a]ny Settlement Class Member who fails to submit a timely and complete Request for Exclusion sent to the proper addresses shall remain in the Settlement Class* and shall be subject to and bound by all determinations, orders[,] and judgments in the Action concerning the Settlement[.]" (*Id.* ¶ 17 (emphasis added).) Chaffey did not timely opt out of the Settlement Class by the October 9, 2024, deadline, according to the procedure detailed in the Preliminary Approval Order. (*See* Defs.' Br. 3.) On December 13, 2024, the Court granted the Final Approval of the Class Action Settlement. (*See generally* MDL, Order Granting Mot. for Settlement, ECF No. 377; MDL, Final J.)

Plaintiff now argues that it should not be bound by the final judgment entered by this Court. (*See generally* Pl.'s Br.) Specifically, Plaintiff argues that it is not bound by the class settlement for at least three reasons: "(1) Chaffey gave much more than a reasonable indication that it intended to opt-out of the class settlement[;] (2) FieldTurf failed to give proper notice to Chaffey under [Federal Rule of Civil Procedure[5]] 23[6] of the proposed class settlement[;] and (3) even if the Court finds against Chaffey on the first two grounds, the Court should grant Chaffey relief to opt-out of the class under [Rules] 6(b) and 60(b)." (Pl.'s Br. *3.) The Court addresses each argument in turn.

*First*, Plaintiff argues that it gave the required "reasonable indication" that it intended to opt out of the class settlement. (*See id.* at *3-4.) As Defendants point out, the Third Circuit rejected the "reasonable indication" standard in *Perrigo Institutional Investor Group v. Papa*, 150 F.4th

---

[5] All references to "Rule" or "Rules" hereafter refer to the Federal Rules of Civil Procedure.

[6] In relevant part, Rule 23 provides that "the court may direct appropriate notice to the class" and "upon ordering notice . . . to a class . . . the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2).

206 (3d Cir. 2025). (*See* Defs.' Br. 4-5.)  As articulated by the Third Circuit, "[b]ecause Rule 23 requires a district court to prescribe the way for class members to request exclusion, [class members] have to follow [the required] instructions in order to opt out—a mere 'reasonable indication' of an intent to opt out will not do." *Perrigo*, 150 F.4th at 217; *see also In re Prudential Ins. Co. of Am. Sales Pracs. Litig.*, 177 F.R.D. 216, 238 (D.N.J. 1997) ("Class members, however, must file a valid request for exclusion regardless of whether they have an individual action filed and pending prior to the opt-out deadline."). Because Chaffey did not follow the procedure for opting out of the class settlement as prescribed by the Court, Plaintiff's first argument must fail.

 *Second*, Plaintiff argues that FieldTurf failed to give Chaffey proper notice of the proposed class settlement. (*See* Pl.'s Br. *4.) Plaintiff contends that the notice that Chaffey purportedly received was sent to "some dead email address that had not been in use for years" and that "Chaffey has no record of ever receiving any notice of the proposed [class] settlement[.]" (*Id.* at *4, *4 n.4.) Defendants argue that: (1) they provided notice to Chaffey pursuant to the method the Court found "reasonable and adequate under the circumstances in accordance with [Rule 23;]" (2) "Chaffey received actual notice of all Court filings through ECF—since Chaffey was an individual named plaintiff in the MDL—via its counsel"[;] (3) "Chaffey also received individual notice through direct mailing at its address, as confirmed by the Claims Administrator"; and (4) Chaffey "received public and constructive notice through the settlement website and the settlement toll-free telephone number." (Defs.' Br. 4; Decl. of R. Skibell ¶ 5, ECF No. 97-1 ("The Claims Administrator Epiq confirmed . . . that Chaffey received individual notice of the settlement (with the opt-out procedures) by direct mail on August 8, 2024[,] at its address 211 W 5th Street, Ontario, CA 91762-1698 and that this direct mailing was received and not returned.").)

FieldTurf's confirmation that notice was mailed to Chaffey's address (and not returned) creates a rebuttable presumption that notice was received. *See In re Cendant Corp. Prides Litig.*, 311 F.3d 298, 304 (3d Cir. 2002) ("The common law has long recognized a presumption that an item properly mailed was received by the addressee." (citations omitted)); *In re Chevrolet Bolt EV Battery Litig.*, No. 20-13256, 2025 WL 2976843, at *7 (E.D. Mich. Oct. 17, 2025) (noting that because a party "does not dispute that the notice was sent to both her correct address and correct email address . . . [she] failed to rebut the presumption that the notice was received" (citation omitted)). Chaffey conspicuously takes issue with the notice sent to a purportedly outdated email address but fails to advance any argument about the mailed notice.[7] (*See* Pl.'s Br. *2-3, *3 n.1; *see also id.* at *4 (arguing that FieldTurf was required to send notice to "Chaffey's counsel in this case or to a current Chaffey official, not to some dead email address that had not been in use for years")). Further, it is clear that Chaffey's counsel received notification of the procedure to opt-out of the class via ECF filings.[8] *See Silvercreek Mgmt., Inc. v. Banc of Am. Sec., LLC*, 534 F.3d 469, 472-73 (5th Cir. 2008) ("A court may hold a party accountable for the acts and omissions of its counsel. . . . This case presents a prime example of such conduct. There is no doubt that [plaintiff's] counsel received the preliminary order[.]"). The Court, accordingly, rejects Plaintiff's argument that FieldTurf failed to provide proper notice.

*Third*, Plaintiff argues that it should not be bound by the class settlement pursuant to Rules 6(b) and 60(b). (*See* Pl.'s Br. *4-5.) "[Rules] 6(b)(1)(B) and 60(b)(1) allow[] courts to provide

---

[7] Although "testimony denying receipt [may] suffice[] to rebut the presumption[,]" *see In re Cendant Corp. Prides Litig.*, 311 F.3d at 304 (citing *In re The Yoder Co.*, 758 F.2d 1114, 1118 (6th Cir. 1985)), Chaffey does not advance any argument specifically denying receipt via mail, and instead conclusorily states that it did not receive the required notice (*see* Pl.'s Br. *4).

[8] While Plaintiff's counsel does not affirmatively state that it received ECF filings for the MDL litigation, which includes filings related to the proposed class settlement, the Court has no reason to conclude that Plaintiff's counsel did not receive them.

litigants relief from a missed deadline or an order or judgment upon a showing of excusable neglect." *Roofer's Pension Fund v. Papa*, No. 16-2805, 2024 WL 4205638, at *12 (D.N.J. Sep. 12, 2024), *aff'd sub nom., Perrigo Institutional Inv. Grp. v. Papa*, 150 F.4th 206 (3d Cir. 2025). To determine whether to excuse Plaintiff's failure to timely opt-out as "excusable neglect," the Court must consider and balance four factors: (1) "the danger of prejudice; [(2)] length of delay; [(3)] reason for delay; and [(4)] whether the movant acted in good faith" (the "*Pioneer* factors"). *Perrigo*, 150 F.4th at 217 (discussing factors articulated in *Pioneer Investment Services Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993)). Here, the factors weigh against finding excusable neglect.[9]

The prejudice factor heavily weighs against Chaffey because allowing Chaffey to opt-out of the class settlement well after the deadline and after the Court entered the Final Judgment (*see generally* MDL, Final J.) would "jeopardize the security and finality" of the class settlement. *See Roofer's Pension Fund*, 2024 WL 4205638, at *15; *see also In re Dvi, Inc. Sec. Litig.*, No. 03-5336, 2016 WL 1182062, at *8 (E.D. Pa. Mar. 28, 2016) ("The prejudice . . . weighs heavily in favor of denial of the [plaintiffs'] request for exclusion. . . . The opt-out deadline . . . was a negotiated, express term . . . by which [d]efendants sought to achieve finality and thereby financial certainty. Allowing the [plaintiffs] to belatedly opt out now would increase [d]efendants' potential financial obligations."); *In re Nat'l Football League Players' Concussion Injury Litig.*, No. 12-md-2323, 2019 WL 95917, at *8 (E.D. Pa. Jan. 3, 2019) ("[A]llowing additional opt-outs at this late date

---

[9] The Court also notes that Plaintiff did not analyze the four *Pioneer* factors in its letter brief (*see generally* Pl.'s Br.), and instead conclusorily argued that "Chaffey has dealt independently with defense counsel cthe [*sic*] category of the successful moving parties in *Roofer's [Pension Fund]* and all other factors under Rules 6[(]b) and 60(b) militate in Chaffey's favor" (*id.* at *5).

would further prejudice the [defendants] because they relied on the guarantee that they would know the number of opt-outs by a certain date when they agreed to the [s]ettlement.").

The length of the delay factor[10] slightly weighs against Chaffey because Chaffey waited approximately three months after the deadline to request opting out. (*See* Defs.' Br. 3 (noting October 9, 2024, opt-out deadline); Jan. 5, 2025, Correspondence); *see, e.g.*, *In re Imprelis Herbicide Mktg., Sales Pracs. & Prods. Liab. Litig.*, MDL No. 2884, 2014 WL 348593, at *5 (E.D. Pa. Jan. 31, 2014) (explaining that an opt-out request filed either two or five months after deadline was "materially delayed").

The reason for delay factor also weighs against Chaffey because a mistaken belief that Chaffey need not comply with the opt-out procedures is not a cognizable justification for non-compliance or delay here. *See, e.g.*, *In re Nat'l Football League Players' Concussion Injury Litig.*, 2019 WL 95917, at *9 ("[Plaintiff's] confusion about her opt-out status, standing alone, is not enough to support a finding of excusable neglect."); *In re Imprelis*, 2014 WL 348593, at *6 (finding factor weighed against finding excusable neglect where plaintiff had mistaken belief that defendant understood its intention to opt-out).

Lastly, even if Chaffey's misunderstanding and current request were made in good faith, that is not sufficient grounds to find excusable neglect. *See In re Nat'l Football League Players' Concussion Injury Litig.*, 2019 WL 95917, at *9 ("[T]he [c]ourt does not question that [plaintiff's] misunderstanding of the opt-out requirements and her present request are in good faith. It is unfortunate for [plaintiff], who has been continuously represented by counsel, that the [c]ourt must

---

[10] "[The Court] measure[s] delay 'in absolute terms and not by reference to the import of intervening circumstances,' meaning the operative period is the time between when the opt-out notice should have been filed versus the date leave was sought to file it late." *Perrigo*, 150 F.4th at 218 (quoting *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 246 F.3d 315, 325 (3d Cir. 2001)).

attribute the mistaken assumption that she did not need to individually opt out . . . to her.");
*Roofer's Pension Fund*, 2024 WL 4205638, at *15 ("Nothing in the record suggests [plaintiff]
failed to timely opt out to gain a tactical advantage. . . . Still, the other *Pioneer* factors disfavor
[plaintiff]. . . . So [plaintiff's] failure to timely opt out is inexcusable."). Chaffey's delay is,
therefore, inexcusable.

      Based on the foregoing,

**IT IS**, on this ___28th___ day of January 2026, **ORDERED** as follows:

1.     Plaintiff's request (ECF No. 94) to reopen and return the Member Case to its
    originating court is **DENIED**.

2.     The Member Case will remain closed.

                                              
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**